104 F.3d 355
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Michael EDREI, Mary Edrei, Carriage Four Associates and S.D.
Realty Associates, Plaintiffs-Appellants,
v.
COPENHAGEN HANDELSBANK A/S, Defendant-Appellee,
DEN DANSKE BANK, Counter-Claim-Plaintiff,
v.
Michael EDREI and Mary Edrei, Counter-Claim-Defendants.
 No. 96-7514.
 United States Court of Appeals, Second Circuit.
 Dec. 19, 1996.
 
 Appeal from the United States District Court for the Southern District of New York (Charles S. Haight, Judge).
 APPEARING FOR APPELLANTS: Martin A. Stein, Parker Duryee Rosoff & Haft, New York, NY.
 APPEARING FOR APPELLEE: Mark G. Cunha, Simpson Thacher (Copenhagen Handelsbank & Bartlett, New York, NY. A/S, now Den Danske Bank).
 S.D.N.Y.
 AFFIRMED.
 Before FEINBERG, ALTIMARI and PARKER, Circuit Judges.
 
 
 1
 This cause came to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel for appellants and appellee.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED
 
 
 3
 Michael Edrei appeals from an order granting summary judgment to Copenhagen Handelsbank A/S ("the Bank") on Edrei's claims for fraudulent inducement and negligent misrepresentation and on the Bank's counterclaim for enforcement of a settlement agreement. The Bank lent Edrei's company (Edrei Communications Corporation or "ECC") over $20,000,000 to finance the company's acquisition of several publishing businesses in the New York area. Edrei was the sole shareholder of ECC and served as its president and chief executive officer. When ECC defaulted on the loan payments, the Bank took over ECC and eventually bought the company in a foreclosure sale. Edrei argues that the Bank fraudulently induced him to enter into an agreement to settle litigation with the Bank by falsely promising him that the Bank would negotiate in good faith with any interested purchaser of ECC he introduced to the Bank.
 
 
 4
 The Bank executed a Settlement Agreement with Edrei on October 18, 1989. The parties agreed to terminate all outstanding claims and litigation arising out of the Bank's takeover of Edrei's company, ECC, in the aftermath of ECC's $219,600 default on the Bank's loan. At the time he executed the Settlement Agreement, Edrei was trying to arrange for a group of investors known as the "Perlman Group" to buy ECC from the Bank. At Edrei's request, the Bank agreed in the Settlement Agreement to negotiate in good faith with any bona fide purchaser introduced to the Bank by Edrei. The Bank also agreed to reduce the amount of Edrei's personal obligation under a Limited Guaranty in the ECC loan agreement from $1,000,000 to $500,000. This $500,000 is the subject of the Bank's counterclaim.
 
 
 5
 The Bank eventually sold ECC to Crimson Capital Corporation ("Crimson"). Edrei claims that the Bank never intended to negotiate in good faith with the Perlman Group and fraudulently procured the Settlement Agreement by inserting the "good faith" clause. As evidence, he points to statements by a Bank official prior to the Settlement Agreement that the Bank would not look favorably upon an offer sponsored by Edrei or that provided compensation to Edrei. He also points to a provision in the agreement between the Bank and Crimson prohibiting the transfer of any ECC stock to Edrei. Furthermore, he argues that the terms on which the Bank sold ECC to Crimson were inferior to the Perlman Group's offer in various ways and that the Bank dealt unfairly with the Perlman Group.
 
 
 6
 Under New York law, which applies here, fraud must be proved by clear and convincing evidence. Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 971 (2d Cir.1987). The district court determined that no reasonable finder of fact could conclude by clear and convincing evidence that the Bank procured the Settlement Agreement by fraud. The district court carefully scrutinized Edrei's evidence of fraudulent intent, reasoning that the motive Edrei attributes to the Bank--refusing to negotiate in good faith with potential investors solely due to their association with Edrei--would be against the Bank's economic self-interest.
 
 
 7
 Considering Edrei's fraud claim, the court properly rejected as unfounded and speculative Edrei's explanation of the Bank's motive not to negotiate in good faith with the Perlman Group. Edrei claimed that the Bank's New York branch officers had blamed all of the loan problems on Edrei to the Bank's Denmark headquarters and therefore could not propose a deal where Edrei had any role. In light of the economic irrationality of the purported motive, the lack of any evidence on this point was significant.
 
 
 8
 As to Edrei's purported direct evidence of fraud--including the Bank officer's pre-Settlement Agreement statements and the provision in the Crimson agreement prohibiting stock transfers to Edrei--it was not significantly probative of fraudulent intent. The fact that a Bank officer voiced his concern about Edrei's role in any deal, in the open to Edrei's investment advisor, before the Bank committed to negotiate in good faith, is not probative of fraud. The Bank was obligated to negotiate in good faith; it did not have to ignore Edrei's role in any future deal. For the same reason, the provision in the agreement between the Bank and Crimson prohibiting stock transfers to Edrei was not sufficiently probative of fraudulent intent. Although the Bank committed to negotiate in good faith with investors introduced by Edrei, it did not bind itself to allow Edrei to maintain a future role in the company.
 
 
 9
 Regarding Edrei's claim that the Bank did not deal fairly with the Perlman Group, the district court concluded that Edrei did not produce evidence to establish that the Bank's concerns about the terms of the Perlman Group's proposals were pretextual. The Bank repeatedly informed the Perlman Group that their offer needed to include an infusion of risk capital into ECC. The Bank communicated its concerns about the Perlman Group's October 16 offer after the Settlement Agreement had been executed. However, the Perlman Group did not subsequently offer to provide risk capital or to accommodate the Bank's other concerns. Likewise, Edrei offers nothing to establish that the Bank's purported concern about Clifford Perlman's role in the bidding group was pretextual. Perlman had previously been denied a gaming permit in New Jersey on account of his associations with organized crime. Although the Perlman Group offered to reconstitute the group, it did not specifically offer to exclude Perlman and never in fact did so. Finally, uncontradicted evidence showed that the Bank negotiated with the Perlman Group before the Settlement Agreement was executed, and contacted the group about the Bank's concerns after the Settlement Agreement was executed. Though Edrei claims that the Bank's contacts with Edrei's investment banker should not count as communications between the Perlman Group and the Bank, the record is to the contrary. Edrei's investment banker also represented the Perlman Group in negotiations with the Bank. After the Bank contacted the Perlman Group about its October 16 offer, the group did not pursue negotiations, or make any renewed offers to the Bank. Accordingly, this evidence does not support an inference of fraud.
 
 
 10
 In light of Edrei's burden to prove fraud by clear and convincing evidence, we agree with the district court that Edrei's fraudulent inducement claim should be dismissed. We therefore affirm the district court's award of summary judgment to the Bank on Edrei's fraud claim. We affirm the district court's rulings on Edrei's negligent misrepresentation claim and on the Bank's counterclaim for substantially the same reasons.